332 P.3d 47

**DEPARTMENT OF CHILD SAFETY, Petitioner,**

**v.**

**The Honorable James P. BEENE, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Angel B.; Osanna B.; A.B.; R.B., Real Parties in Interest.[1]**

No. 1 CA–SA 14–0058.

Court of Appeals of Arizona, Division 1.

July 24, 2014.

As Amended July 30, 2014.

---

1. Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess., effective May 29, 2014, DCS is substituted for the Arizona Department of Economic Security. See Ariz. R. Civ.App. P. 27. The caption also has been amended to safeguard the children's identities pursuant to Administrative Order 2013–0001.

Arizona Attorney General's Office By Dawn R. Williams, Toni Valadez, Phoenix, Counsel for Petitioner.

Jeffrey M. Zurbriggen, P.C. By Jeffrey M. Zurbriggen, Phoenix, Counsel for Real Party in Interest Angel B.

Timothy V. Nelson, Gilbert, Counsel for Real Party in Interest Osanna B.

Presiding Judge SAMUEL A. THUMMA delivered the opinion of the Court, in which Judge JOHN C. GEMMILL and Judge RANDALL M. HOWE joined.

## OPINION

THUMMA, Judge.

¶ 1 The issue in this special action is whether parents, at a trial (called an adjudication) on a motion to terminate their parental rights, have a due process right to call their children as witnesses to confront and cross-examine them about the children's hearsay statements admitted in evidence. Petitioner Department of Child Safety (DCS) challenges the denial of its motion for a protective order seeking to preclude such testimony, arguing the superior court should have considered the children's best interests in deciding whether parents had a right to call them as witnesses. Although parents have a due process right to challenge their children's statements received in evidence at a severance trial, whether that right includes calling the children as witnesses to confront and cross-examine them requires a consideration of the best interests of the children. Accordingly, this court accepts special action jurisdiction, grants relief, vacates the order denying DCS' motion for protective order and remands for further proceedings not inconsistent with this decision.

## BACKGROUND

¶ 2 Angel B. and Osanna B. (Parents) are parents of A.B., born in 2003, and R.B., born in 2007. The children were found dependent after R.B. was taken to a hospital in April 2011, unconscious, with a subdural hematoma, liver laceration, healing rib fracture, bruising and scratches. *See* A.R.S. § 8–201(14) (2014).[2] Parents were indicted on various felony child abuse charges, with offense dates on or between November 2009 and April 2011.[3]

¶ 3 After Parents appealed, the dependency findings were affirmed. That appeal also rejected Father's claim that he was denied due process when the superior court precluded him from calling A.B. as a witness in the dependency trial.[4] At a subsequent permanency planning hearing, the superior court changed the case plan to severance and adoption. *See* A.R.S. § 8–862(B). DCS then filed a motion to terminate parental rights alleging, as amended, child abuse and fifteen-months time-in-care as grounds for termination. *See* A.R.S. § 8–533(B)(2) & (8)(c).

¶ 4 In anticipation of the severance trial, DCS moved for a protective order precluding Parents from calling the children as witnesses. Claiming good cause under Arizona Rule of Civil Procedure 26(c), and citing *Yavapai County Juvenile Action No. J–9365*, 157 Ariz. 497, 759 P.2d 643 (App.1988), DCS

---

2. Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

3. Ultimately, Mother pled guilty to felony child abuse of R.B. and was placed on supervised probation for twenty years. Along with serving jail time, Mother's conditions of probation preclude her from having "any contact with the victim(s) in any form," or being "alone with any child (17 or younger) or any animal," without written permission of her probation officer. On the State's motion, the charges against Father were dismissed without prejudice.

4. This court takes judicial notice of the memorandum decision affirming the dependency findings. *See Angel B. v. Ariz. Dep't of Econ. Sec.*, 1 CA–JV 12–0055, 2012 WL 6061021 (Ariz.App. Dec. 6, 2012) (mem. dec); Ariz. R. Evid. 201; Ariz. R. Civ.App. P. 28(c).

noted that therapists and a psychologist for the children "have all strongly opined that it would not be in the children's best interest to testify." Father, in a response Mother joined, opposed DCS' motion, arguing Parents "have an unequivocal due process right to have their kids testify subject to cross examination" that is "NOT conditioned upon any best interests analysis." Father also sought an order that the children be "present at Court to testify at trial with all lawyers and parties present," adding that if the superior court "precludes the children from testifying," the court should "preclude evidence of any and all statements by the kids about any alleged abuse or neglect." In reply, DCS noted it "does not intend to call either of the children as a witness" but does "intend to present the children's statements regarding the abuse and neglect they suffered through other witnesses." DCS further argued that "a parent's due process right to confront their children at trial—assuming that they had such a right—would be conditioned upon a best-interests analysis."

¶ 5 After hearing oral argument, the superior court implicitly found DCS had shown good cause under Arizona Rule of Civil Procedure 26(c) but denied the motion for protective order. Discussing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Maricopa County Juvenile Action No. JD–561*, 131 Ariz. 25, 638 P.2d 692 (1981), but without addressing the best interests of the children, the ruling noted that maintaining Parents' "due process rights in a termination proceeding is superior to the interests of the state." Accordingly, the ruling concludes that precluding Parents from calling the children as witnesses would violate Parents' due process rights. To protect the children's emotional interests, however, the court ordered that Parents "shall not be present during the examination of the children at the termination hearing," adding that the court "may impose other reasonable limitations in regards to the examination of the children in order to protect their emotional interests."

DCS unsuccessfully sought reconsideration, arguing the ruling "failed to consider the children's best interests." DCS then filed this special action petition and this court has considered additional briefing and oral argument not provided to the superior court.

## DISCUSSION

### I. Special Action Jurisdiction.

▆▆▆ ¶ 6 Special action jurisdiction is appropriate where petitioner has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a); *Arpaio v. Figueroa*, 229 Ariz. 444, 446 ¶ 5, 276 P.3d 513, 515 (App.2012) (citation omitted). Special action jurisdiction is appropriate to address an issue of first impression that is " 'a purely legal question, is of statewide importance, and is likely to arise again.' " *Lear v. Fields*, 226 Ariz. 226, 229 ¶ 6, 245 P.3d 911, 914 (App.2011) (quoting *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992)). Although "highly discretionary," *Randolph v. Groscost*, 195 Ariz. 423, 425 ¶ 6, 989 P.2d 751, 753 (1999), accepting special action jurisdiction is particularly appropriate where the welfare of children is involved and the harm complained of can only be prevented by resolution before an appeal. *See Stuard v. Bean*, 27 Ariz.App. 350, 351, 554 P.2d 1293, 1294 (1976).

¶ 7 As applied, the petition seeks review of an order that is not a final appealable order at this time, implicates the best interests of the children and involves a legal issue of statewide importance that is unresolved in Arizona and is likely to arise again. Moreover, there is no equally plain, speedy and adequate remedy by appeal. Accordingly, in exercising its discretion, this court accepts special action jurisdiction.[5]

### II. The Merits.

#### A. Standard Of Review.

▆▆▆ ¶ 8 The parties agree that Arizona Rule of Civil Procedure 26(c) applies to the

5. The petition was not filed until nearly six months after issuance of the ruling challenged. Ordinarily, this court would not exercise special action jurisdiction following such a delay. How-

ever, because the best interests of the children are implicated, this court exercises its discretion to accept special action jurisdiction in this case.

motion for protective order and that DCS had the burden to show "good cause" for the protective order to issue. Parents, however, had the burden to show that their due process rights under the Fourteenth Amendment to the United States Constitution would be denied if they could not call their children as witnesses to confront and cross-examine them about the children's hearsay statements admitted in evidence. *See Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, 151 ¶ 9, 985 P.2d 633, 636 (App.1999). The decision to grant a protective order is reviewed for an abuse of discretion. *See J–9365*, 157 Ariz. at 501, 759 P.2d at 647. Legal issues, including the correct legal standard to apply, are reviewed de novo. *See Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, 257 P.3d 1162, 1165 (App.2011).

### B. Protecting The Best Interests Of The Child Permeates Dependency And Severance Proceedings.

■■■ ¶ 9 In dependency and severance proceedings, "the child's best interests are paramount." *Don L. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 556, 559 ¶ 7, 975 P.2d 146, 149 (App.1998) (citation omitted). As promulgated by the Arizona Supreme Court, the rules governing these proceedings "should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child." Ariz. R.P. Juv. Ct. 36. More broadly, consideration of the child's best interests permeates dependency and severance proceedings. *See, e.g.*, A.R.S. § 8–821(A) (temporary custody authorized "to protect the child"); A.R.S. § 8–845(B) ("In reviewing the status of the child and in determining" proper case plan, "the court shall consider the health and safety of the child as a paramount concern."); A.R.S. § 8–517 (allowing change in foster placement if "necessary for the child's [best] interests and welfare"); A.R.S. § 8–533(B) (requiring consideration of "the best interests of the child" in addressing severance); *Alexander M. v. Abrams*, 235 Ariz. 104, 107 ¶ 15, 328 P.3d 1045, 1048 (2014) ("Arizona's statutes, case law and rules of procedure reflect that the juvenile court is obligated to oversee the dependency case, [and] to consider the best interests of the

child in every decision."); *see also Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18, 67 P.3d 695, 698 (2003) (noting, in Title 25 child custody context, "[w]e have repeatedly stressed that the child's best interest is paramount in custody determinations") (citing cases). This focus necessarily includes considering whether it is in a child's best interests (including consideration of age, experience, psychological well-being, danger of trauma and other relevant facts) to be called by a parent as a witness to be confronted and cross-examined by statements attributed to the child. *See* Ariz. R.P. Juv. Ct. 36; *see also Xavier R. v. Joseph R.*, 230 Ariz. 96, 98 ¶ 6, 280 P.3d 640, 642 (App.2012) (noting Ariz. R.P. Juv. Ct. 36 "requires that we interpret the rules of juvenile procedure 'in a manner designed to protect the best interests of the child' "). The question, then, is whether Parents' due process rights preclude the superior court from considering the best interests of the children in this context.

### C. Due Process Does Not Preclude The Superior Court From Considering The Best Interests Of The Child In Determining Whether Parents May Call The Child As A Witness To Confront And Cross–Examine The Child About The Child's Prior Statements Admitted In Evidence.

■■ ¶ 10 The parties concede that no prior Arizona appellate decision decides whether Parents have a due process right to call their children as witnesses without considering the children's best interests. *See JD–561*, 131 Ariz. at 27, 638 P.2d at 694 (vacating dependency finding where child "was interviewed by the judge without anyone being present except the therapist and a court reporter;" where neither parents nor their attorneys are present for child's testimony, "absent stipulation of the parties, parents are denied due process of law when refused the right to cross-examine their children during a dependency hearing"); *Maricopa Cnty. Juv. Action No. JS–7499*, 163 Ariz. 153, 154–55, 158, 786 P.2d 1004, 1005–06, 1009 (App.1989) (stating, where severance was granted based in part on child's testimony in a prior proceeding "including direct, cross-, and redirect

examination," "[w]hatever the scope of a parent's rights to due process of law in proceedings that affect the parent-child relationship, face-to-face confrontation with the child is not among them"); *J–9365,* 157 Ariz. at 499, 500–01, 759 P.2d at 645, 646–47 (affirming protective order precluding father from calling daughter to testify at severance trial; father previously had been convicted of sexually abusing daughter, meaning "whether [father] had sexually abused his daughter was finally adjudicated and was not subject to collateral attack");[6] *Maricopa Cnty. Juv. Action No. JS–4374,* 137 Ariz. 19, 23, 667 P.2d 1345, 1349 (App.1983) (affirming severance; rejecting mother's claimed "due process right to confrontation" was denied where her bond restrictions for a Texas homicide charge "forbade her from leaving Texas" to attend a severance trial; stating, in dicta, "that a parent in a termination proceeding does have the right to confront witnesses where the witnesses' testimony goes to the heart of the termination proof"). Nor do cases from other jurisdictions provide a clear answer. *See* Appendix A.[7]

¶ 11 "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews,* 424 U.S. at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Determining what process is due focuses on the:

1. nature of the proceedings,

2. private interests at stake,

3. interests of the state, and

4. risk that the procedures used will lead to erroneous decisions.

*JD–561,* 131 Ariz. at 27, 638 P.2d at 694; *accord Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *JS–7499,* 163 Ariz. at 158, 786 P.2d at 1009 (similar) (citing cases); *see also* Appendix A (discussing cases from other jurisdictions).[8] As these factors suggest, due process does not involve "inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Rest. Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (citations omitted). Indeed, "[d]ue process requirements may vary depending on the setting." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs,* 222 Ariz. 433, 437 ¶ 14, 215 P.3d 1114, 1118 (App.2009) (citing cases). Moreover, confrontation and cross-examination "are not rights universally applicable to all hearings. Rules of procedure may be shaped by consideration of the risks of error, and should also be shaped by the consequences which will follow their adoption." *Wolff v. McDonnell,* 418 U.S. 539, 567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citations omitted). "The task of the courts is to weigh and balance the competing interests." *JD–561,* 131 Ariz. at 27, 638 P.2d at 694 (citing cases).

### a. The Nature Of The Proceedings.

¶ 12 "[A] severance proceeding is civil in nature." *Cecilia A. v. Ariz. Dep't of Econ. Sec.,* 229 Ariz. 286, 290 ¶ 14, 274 P.3d 1220, 1224 (App.2012) (citing *Denise H. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 257, 259 ¶ 6, 972 P.2d 241, 243 (App.1998)). Accordingly, the superior court correctly found that, in a severance trial, Parents have no rights

6. Under *J–9365,* Mother's criminal conviction for child abuse of R.B. has been "finally adjudicated and [is] not subject to collateral attack" at the severance trial. 157 Ariz. at 500, 759 P.2d at 647.

7. Similarly, the three cases cited in Father's supplemental brief do not resolve the issue. *In re J.D.C.* contains dicta helpful to parents but did not decide the issue given a waiver. 159 P.3d at 976, 983 (Kan.2007). *In re Amy M.* found a due process violation based on California state law procedures, noting (unlike in Arizona) "there was no substitute for [the child's] testimony that could have been admitted into evidence. Neither was there any report containing [the child's]

statements which could have substituted for his testimony." 232 Cal.App.3d 849, 283 Cal.Rptr. 788, 796–97 (1991). *In re A.M.* found no due process violation when mother was precluded from attending the severance trial (where the child testified) because the child previously testified in her presence at mother's criminal trial. 13 P.3d 484, 485–86 (Okla.2000).

8. Father argues DCS' motion to reconsider conceded that the superior court properly applied *Mathews.* In context, however, that motion states *Mathews* (and, by implication, *JD–561* ) sets forth the proper analysis but that the ruling "failed to also consider the children's best interests or their health and safety."

under the Confrontation Clause of the Sixth Amendment to the United States Constitution or its counterpart contained in Article 2, Section 24, of the Arizona Constitution. *See JS–7499,* 163 Ariz. at 157, 786 P.2d at 1008. Moreover, severance trials are to be conducted informally, Ariz. R.P. Juv. Ct. 6, and as noted above, protecting the best interests of the child permeates such proceedings. Accordingly, the nature of the proceedings demonstrate that the best interests of the children have to be considered when determining whether Parents have a due process right to call, confront and cross-examine their children as witnesses at a severance trial about the children's prior statements admitted in evidence.

### b.  The Interests Involved.

¶ 13 Parents unquestionably have a fundamental liberty interest "in the care, custody, and management of their children." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). DCS has a "compelling interest in protecting child welfare," including protecting the best interests of the children. *Ruben M. v. Ariz. Dep't of Econ. Sec.,* 230 Ariz. 236, 239 ¶ 12, 282 P.3d 437, 440 (App.2012) (citing cases); *Ariz. Dep't of Pub. Welfare v. Barlow,* 80 Ariz. 249, 252, 296 P.2d 298, 300 (1956); *see also Lassiter v. Dep't of Soc. Serv. of Durham Cnty.,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ("[T]he State has an urgent interest in the welfare of the child."). The legitimate interests involved also include the best interests of the child, including any adverse impact on a child by testifying as a witness. *Cf. J–9365,* 157 Ariz. at 500–01, 759 P.2d at 646–47 (noting psychological evidence that child "would regress and withdraw even further than before" if "subjected to questioning" at severance trial and finding, "[u]nder all of the circumstances, the evidence amply supported" protective order prohibiting parent from calling child to testify at severance trial).

### c.  The Risk The Procedures Used Will Lead To Erroneous Decisions.

¶ 14 Subject to certain exceptions, the admissibility of evidence at a severance trial is governed by the Arizona Rules of Evidence. *See* Ariz. R.P. Juv. Ct. 45(A). Since 1986, one such exception is that hearsay evidence of a child's out of court statements of abuse or neglect are admissible without the child testifying if such statements are accompanied by sufficient indicia of reliability. By statute titled "Statement or conduct of child; hearsay exception," evidence of

> [t]he out of court statements or nonverbal conduct of a minor regarding acts of abuse or neglect perpetrated on him are admissible for all purposes in any adoption, dependency or termination of parental rights proceeding under this title [A.R.S. Title 8] if the time, content and circumstances of such a statement or nonverbal conduct provide sufficient indication of its reliability.

A.R.S. § 8–237. The Arizona Supreme Court adopted a corresponding rule, which provides:

> Evidence of the out-of-court statements or nonverbal conduct of a child regarding acts of abuse or neglect perpetrated on the child is admissible for all purposes in any hearing subject to these rules if the time, content and circumstances of such statement or conduct provide sufficient indicia of its reliability.

Ariz. R.P. Juv. Ct. 45(E). This focus on "sufficient indicia of ... reliability" without requiring cross-examination becomes even more significant in context.

¶ 15 Rule 45 of the Arizona Rules of Procedure for the Juvenile Court contains two other exceptions to the rule against hearsay, both of which require cross-examination but not "sufficient indicia of ... reliability." Specifically, a "report[ ] prepared by the protective services worker" and "[r]eports of evaluation" "shall" be admitted in evidence if timely disclosed and "the author of the report is available for cross-examination." Ariz. R.P. Juv. Ct. 45(C) & (D). By contrast, Rule 45(E) does not require cross-examination as a condition of admissibility. Thus, in enacting Rule 45(E), the Arizona Supreme Court found no due process requirement that the child be subject to cross-examination for the admission in evidence of the child's hearsay statement or nonverbal

conduct regarding abuse or neglect if such evidence is accompanied by "sufficient indicia of . . . reliability." *See* Ariz. R.P. Juv. Ct. 45(E).

¶ 16 By allowing the admission in evidence of a child's hearsay statement that bears "sufficient indicia of . . . reliability" without mentioning cross-examination, Rule 45(E) necessarily means that cross-examination is not always required. Otherwise, Rule 45(E) would have included a cross-examination requirement, as in Rules 45(C) and (D). By focusing on whether there are "sufficient indicia of reliability," rather than a cross-examination right, Rule 45(E) accounts for the concern about "the risk that the procedures used will lead to erroneous decisions." *JD–561*, 131 Ariz. at 27, 638 P.2d at 694. Indeed, Rule 45(E) appears carefully crafted to properly account for reports of abuse and neglect and is consistent with the directive that evidentiary rules are construed "to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination." Ariz. R. Evid. 102.

¶ 17 Parents argue that, unless they are allowed to call their children as witnesses to confront and cross-examine them, they will be unable to challenge and test the reliability of statements attributed to the children. Parents, however, can challenge and test the reliability of statements attributed to the children without calling them as witnesses. *See, e.g.,* Ariz. R. Evid. 806 (allowing hearsay declarant's credibility to be attacked, even if the declarant does not testify, including by admission of inconsistent statements or conduct); *see also* Ariz. R. Evid. 405 ("Methods of Proving Character"); Ariz. R. Evid. 608 ("A Witness's Character for Truthfulness or Untruthfulness"). Such efforts can take various forms such as contrary testimony as well as cross-examination of other witnesses about statements attributed to the children, including authors of documents containing such statements. *See also* Ariz. R.P. Juv. Ct. 45(C) & (D). Indeed, Father's response to the special action petition purports to refute many factual assertions without any testimony from the children. Parents' ability to challenge and test the children's statements without calling them as witnesses negates

Parents' claim that "if the statements are admitted into evidence AND the parents are not able to ask the children questions, then there is no legal method to directly challenge those statements."

¶ 18 Along with these safeguards, consideration of the specific statements attributed to the children that DCS intends to offer at trial is necessary to assess the risk that the procedures used will lead to erroneous decisions. To date, however, DCS has not provided an offer of proof describing that intended evidence with any precision.

¶ 19 In determining whether Parents would be denied due process if they are not allowed to call their children as trial witnesses, the weighing and balancing of these factors is contextual and case-specific. Contrary to Parents' argument, however, the best interests of the children (including the potential harm to the children if required to testify at trial) properly may be considered in that weighing and balancing. If warranted by the facts and circumstances, that weighing and balancing may mean that Parents do not have a due process right to call their children as witnesses to confront and cross-examine them about the children's prior statements admitted in evidence at a severance trial. *Cf. J–9365*, 157 Ariz. at 500–01, 759 P.2d at 646–47; *In re J.S.P.L.*, 532 N.W.2d 653, 660 (N.D.1995) ("In termination of parental rights cases, several courts have said that due process does not entitle a parent to personally confront and cross-examine a child witness if the child would be traumatized by the experience.") (citing cases).

### D. Proceedings On Remand.

¶ 20 On remand, unless the parties' positions change, DCS will have the burden to show good cause for a protective order precluding the children from being called as witnesses. *See* Ariz. R. Civ. P. 26(c). DCS will then need to make an offer of proof describing the statements attributed to the children that it seeks to offer and show a reasonable likelihood that those statements would be admitted in evidence at trial. *See* Ariz. R.P. Juv. Ct. 45(E). If DCS makes such a showing, Parents will then have the burden to show that they will be denied due

process if they are not allowed to call their children as witnesses to confront and cross-examine them about the statements contained in the offer of proof that may be admitted in evidence, with the parties having an opportunity to be heard on the applicable factors outlined above, including whether it would be in the best interests of the children to be called as witnesses. *See Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *JD–561,* 131 Ariz. at 27, 638 P.2d at 694. Finally, if Parents meet their burden to make such a showing, the superior court may then properly consider alternatives to traditional testimony in open court. *See* Ariz. R. Evid. 611(a); *see also In re J.S.P.L.,* 532 N.W.2d at 660 (citing cases using various alternatives).

## CONCLUSION

¶ 21 Based on oral argument and the extensive briefing provided to this court, including supplemental briefing discussing how the issue has been addressed in other jurisdictions (none of which was presented to the superior court), this court accepts special action jurisdiction, grants relief, vacates the order denying DCS' motion for protective order and remands for further proceedings not inconsistent with this decision.

## APPENDIX A

Some cases cited by the parties from other jurisdictions have used factors similar to those identified in *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Maricopa County Juvenile Action No. JD–561,* 131 Ariz. 25, 27, 638 P.2d 692, 694 (1981) to determine what due process requires in dependency and severance trials, with differing outcomes depending upon the specific facts and circumstances of the case. *See, e.g., In re Lucero L.,* 22 Cal.4th 1227, 96 Cal.Rptr.2d 56, 998 P.2d 1019, 1032 (2000) (setting forth factors akin to *JD–561* factors); *In re C.W.D.,* 232 Ga.App. 200, 501 S.E.2d 232, 240 (1998) (citing *Mathews); In re J.D.C.,* 284 Kan. 155, 159 P.3d 974, 982 (2007) (citing *Mathews* ); *In re Rebecca,* 419 Mass. 67, 643 N.E.2d 26, 32 (1994) (citing *Mathews* ); *In re Charles Jason R., Jr.,* 572 A.2d 1080, 1081 (Me.1990) (citing *Mathews* ); *In re Pamela A.G.,* 139 N.M. 459, 134 P.3d 746,

750–51 (2006) (citing *Mathews* ); *In re A.M.,* 13 P.3d 484, 487 (Okla.2000) (citing *Mathews); see also In re Tayler F.,* 296 Conn. 524, 995 A.2d 611, 632 (2010) ("[Mother] essentially contends that she has an *unqualified* due process right to confront and cross-examine witnesses that bars the admission of evidence otherwise properly admitted under our rules of evidence. She has provided no authority for this proposition, and we are aware of none.").

Other courts appear to use different standards. *See In re A.S.W.,* 834 P.2d 801, 806 (Alaska 1992) (holding "the alleged abuser's due process right to cross-examine the child is adequately protected by the unavailability and reliability requirements of" Alaska's counterpart to Ariz. R. Evid. 804); *In re Elizabeth T.,* 9 Cal.App.4th 636, 12 Cal. Rptr.2d 10, 12–14 (1992) (applying California hearsay exception akin to Ariz. R. Evid. 804(b)(1) for testimony of a child, albeit without a requirement that the witness be unavailable); *In re A.P.,* 179 Ill.2d 184, 227 Ill.Dec. 949, 688 N.E.2d 642, 648 (1997) (construing Illinois statute stating "Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect"); *In re Mark W.,* 383 Ill.App.3d 572, 324 Ill.Dec. 210, 895 N.E.2d 925, 940 (2008) (finding no abuse of discretion for trial court's refusal to require child to testify where it would not have been in the child's best interest); *In re J.Q.,* 836 N.E.2d 961, 965 (Ind.Ct.App.2005) (finding parent "was not given adequate [advance] notice or an adequate opportunity to be heard regarding the admission of [child's] statements"); *J.M.R. v. Commonwealth,* 239 S.W.3d 116, 120 (Ky.Ct.App.2007) (applying Kentucky statute providing that "a child may be permitted to be present during the proceedings and to testify if the court finds such to be in the best interests of the child") (internal quotations omitted), *overruled on other grounds by Colvard v. Commonwealth,* 309 S.W.3d 239 (Ky.2010); *Adoption of Quentin,* 424 Mass. 882, 678 N.E.2d 1325, 1331 (1997)

(applying Massachusetts hearsay exception providing "that an out-of-court statement made by a child under the age of ten related to sexual abuse is only admissible if: (a) a child is unavailable; and (b) the judge makes the additional finding that the statement was reliable, based on a list of enumerated factors"); *In re Nicole V.*, 123 A.D.2d 97, 510 N.Y.S.2d 567, 572–73 (1987) (applying New York provision allowing admissibility of prior statements of abuse or neglect by a child; concluding "due process requirements are met by permitting a finding of abuse to be made on the basis of a child's out-of-court statement which is corroborated by any competent, non-hearsay, relevant evidence, which confirms that the child has been sexually abused and enhances the credibility of the child's statement as to its material elements"); *In re W.D.*, 709 P.2d 1037, 1041–43 (Okla.1985) (construing Oklahoma hearsay exception for a child's statement of abuse against the child, if "the time, content and totality of circumstances of" the statement provide sufficient indicia of reliability "so as to render it inherently trustworthy" after considering enumerated factors and the child either testifies or is unavailable and there is corroborating evidence; holding "the indicia of reliability afforded by [the statute are] sufficiently congruent with the mission of the right to confrontation and appropriate to the nature of the case involved as not to offend constitutional due process requirements"); *C.E. v. Dep't of Public Welfare*, 917 A.2d 348, 353–54 (Pa.Commw.Ct.2007) (applying Pennsylvania statute similar to Massachusetts statute applied in *Quentin* ).

*See also In re Jam. J.*, 825 A.2d 902, 913, 916–17 (D.C.2003) ("Several state courts have addressed the scope of a parent's right to compel a child to testify in a neglect or other civil proceeding concerning that child's welfare when it is claimed that testifying would be contrary to the child's best interests. Broadly speaking, the decisions fall into two groups. Some courts have held that trial judges have no authority to preclude a child's otherwise competent testimony on the ground that testifying might injure the child. Other courts have held that judges do have the authority to subordinate the parent's interest and exclude a child's testimony when there is substantial evidence that the child would be harmed by having to testify." Ultimately concluding "that the trial court does have power to protect a child from the harmful effects of forced testimony," including "[i]n the extreme case, ... [the] discretion to exclude the child as a witness.") (internal citation omitted) (citing cases); *accord In re K.S.*, 966 A.2d 871, 877 (D.C.2009) ("Application of the analysis that we laid out in *Jam. J.* will sometimes permit the complete exclusion of live testimony by a child witness whose hearsay statements are admitted as substantive evidence against the parent in a neglect proceeding.") (dicta).